AUSTIN GILL

*vs.*

FRANCIS NEWELL, impleaded with ISRAEL G. LASH.

Where a vendee, under a parol contract for the sale of land, enters into possession of the land in pursuance of and with direct reference to the parol contract, and makes valuable improvements on the land, it constitutes a part performance of the contract which takes it out of the operation of the statute of frauds.

A parol contract, not within the statute of frauds, made between N. and G. for the purpose of securing for the latter certain land belonging to L., by the terms of which N. was to purchase the land and take the title thereto in his own name, and G. was to furnish all the money necessary to consummate the purchase, and when the purchase was consummated, and a deed procured by N., the latter was to convey the premises immediately to G., and all the rights secured by N. under the contract of purchase between him and L., were to inure instantly to the benefit of G.—N. being merely the channel or conduit through which the title should flow from L. to G.—operates as between N. and G. to transfer to G. all the rights secured by N. under a written contract with L. for the purchase of the land, entered into by N. in pursuance of the parol contract between him and G.; and if N., in fraud of his agreement, repudiates the parol contract and refuses to carry it out—G. not being in default and L. a party to the action interposing no objection—a Court of Equity will give effect to the parol contract by directing a conveyance immediately from L. to G.

N. having repudiated his contract with G. and refused to carry it out, a tender by the former to repay the latter the amounts advanced by him under the contract, and expended in the improvement of the premises, &c., is ineffectual for any purpose.

Gill v. Newell et al.

The repudiation by N. of the parol contract, and his refusal to carry it out, superseded the necessity of a tender to him by G. of the deferred payments under the written contract falling due after such repudiation, if such tender was in any event required.

N. having parted with his interest under the written contract, it is not for him to object to the sufficiency of a tender by G. to L., the latter being a party to the action and interposing no objection.

L. having received notice of G.'s rights in the premises was bound by such notice.

N. having repudiated the parol contract and claimed the land for himself, acquired no rights, either as against G. or L., by an offer to the latter to pay the balance of the purchase money maturing after such repudiation, if L. would convey to him.

This action was commenced in the District Court for Dakota county, and was tried before a referee, who found:

"First, as matters of fact, that the defendant Lash being duly seized in fee of the premises in dispute, on or about the 16th day of May, 1867, held said premises for sale at a certain price and on certain terms, and the defendant Francis Newell was desirous of purchasing the same at the said price and on the terms aforesaid, but could not raise the money necessary to make said purchase, and thereupon he * * * made known to the plaintiff * * * the fact that the said premises were for sale as aforesaid and that he, Newell, could not purchase the same, and advised the said plaintiff to purchase said premises for himself, that thereupon said plaintiff * * * applied to said defendant Lash to make said purchase, but was advised by said defendant Lash that said defendant Newell had the first refusal of said premises, and that in case said Newell did not take them, then a certain third party had the second refusal thereof; and that his, said Gill's, application must be postponed to that of said third party, that thereupon said Newell and said plaintiff mutually desiring to give said plaintiff the said premises and to defeat

the option of the said third party without the knowledge of said Lash, entered into a verbal agreement as follows:

The said Newell should purchase said land and take title thereto in his own name, and the plaintiff should furnish all the money necessary to consummate said purchase, and when said purchase was consummated and a deed thereof procured to said Newell, he, the said Newell, should thereupon immediately convey the same to the plaintiff, and that all the rights secured under the contract of purchase to the said Newell should instantly inure to the benefit of said plaintiff, the said Newell to be merely the channel or conduit through which the title to said premises should flow from the said Lash to plaintiff. That thereupon said plaintiff paid to said Newell the sum of five hundred dollars for the payment in hand provided in the contract hereinafter referred to, and thereupon the said Newell paid the same to said Lash, * * * and thereupon the said Lash executed and delivered to the defendant Newell an agreement in writing for the conveyance of said premises upon the payment of $500 down, $500 in six months and $600 in one year, which said contract or instrument in writing the said Newell thereupon delivered to the plaintiff who has ever since retained the same; that the plaintiff, relying on the said verbal arrangement with said Newell, * * did thereupon enter upon said land, and commenced improving the same by breaking up or plowing the same, and did thereupon break up or plow about one-half of said land, towit, 75 acres thereof, and did pay out and expend in and about said breaking or plowing the sum of $3.00 per acre, for each of said 75 acres; that said land was wholly unoccupied and unimproved prior to the entry of the plaintiff thereon as aforesaid, and it does not appear from the evidence in the case that any other or further improvements have been made thereon, except said plowing; that said defendant Newell

knew of said entry and plowing by plaintiff and made no objection thereto; * * * that said land has never been enclosed by any fence and is not now and never has been in the actual occupation of any one otherwise than as it appears from the foregoing facts.

That about the time the second deferred payment became due under said contract, but before it had matured, the defendant Newell and the plaintiff had an interview in Saint Paul, wherein among other things the said Newell told the plaintiff that he had changed his mind concerning the premises in question, and that he had now concluded not to carry out the said verbal arrangement between them, and that he should hold the said premises himself as his own property if he could, and then and there he offered to repay to said plaintiff all of the money that he had expended or paid out on account of the said land, including the amount that he had expended for the said plowing, together with interest thereon at the rate of twelve per cent. per annum, and in addition thereto to give him a hundred dollars by way of bonus, and for his trouble, and duly tendered him the same, but the plaintiff then and there declined to receive said money or any part thereof, and insisted that the land was rightfully his, and that he would have it if he could hold it, or the law would give it to him.

That the day before the said first deferred payment came due, to-wit, the 16th day of November, 1867, the said Newell offered and was ready to pay up all the deferred payments of purchase money to the defendant Lash and take a deed of said premises, but the said Lash having received notice of the plaintiff's claim to said land, and the said Newell not being able to surrender said contract, which was still in plaintiff's possession, and the said Newell and the plaintiff both claiming said land, the defendant Lash refused to receive the said purchase money, or give a deed for said premises, until the said

plaintiff and the said Newell should settle said controversy between themselves, and the said plaintiff then and there and at the same time and place also offered to pay up all the deferred payments under said contract, if the said Lash would convey to him the said premises, but the said Lash refused to receive his money or to make a conveyance to said plaintiff until said controversy should be settled between said plaintiff and said Newell, the said Lash expressing himself ready and willing and still being ready and willing to receive all of said deferred payments of purchase money and to give a deed for said premises whenever, or as soon as the said parties could agree upon the matters in difference between them, or it could be ascertained which of them was entitled to the premises in question, and the said Lash is now and ever has been ready and willing as aforesaid. That the said Newell is now and ever has been able and willing to pay to said plaintiff the money so expended by him and interest thereon as aforesaid and the said bonus of one hundred dollars, and also is now ready and willing to complete said contract of sale on his part and take a conveyance of said land, but is unwilling to carry out his said verbal agreement with the plaintiff, and said plaintiff is now and ever has been ready and willing and able to make said deferred payments on his part and take a deed of said premises either direct from the said Lash or from the said Newell in case he, said Newell, will carry out said original understanding or agreement between him and the said plaintiff.

The plaintiff has never offered to indemnify the said Newell against the deferred payments, and the mortgage to secure the same, which was provided for in said contract, further or otherwise than his offer to make said deferred payments in advance, on the delivery of the deed, as hereinbefore alleged, nor does it appear from the testimony in the case, that any

other or different arrangement was contemplated, as to the securing of said deferred payments at the time of said verbal agreement, than was provided for in said contract, nor did said Newell ever request the plaintiff to furnish any such indemnity, nor does it appear that the want of such indemnity had anything to do with said Newell's refusal to carry out said verbal agreement.

·That in addition to the payment of said first installment of purchase money, the said plaintiff paid to said Newell all the expenses incurred by him in procuring said contract from said Lash.

That all the allegations of facts contained in the pleadings of the respective parties to this action, except as herein-above set forth, are untrue.

Second, as conclusions of law, that the plaintiff is entitled to a specific performance of the said verbal contract with the defendant Newell, and the defendant Lash being willing to receive the entire amount of the purchase money in hand, and the plaintiff being ready and willing to make such payment, the contract or verbal arrangement between said Newell and the plaintiff will be substantially complied with by the said plaintiff paying up said deferred payments, and taking a deed direct from said defendant Lash. That the plaintiff is entitled to a decree or judgment that on paying to said Lash the said deferred payments of purchase money and interest thereon, the defendant Lash shall make, execute and deliver direct to the said plaintiff a good and sufficient deed of conveyance of all and singular the premises described in said complaint, in fee simple ; and in default thereof that the said decree stand for such conveyance, and that thereupon the said contract in writing be canceled, and surrendered to the said Lash, and that the plaintiff have judgment against the defendant Newell for his costs and disbursements."

Judgment was entered pursuant to such finding, and the defendant Newell appeals therefrom to this Court. No exceptions were taken to the rulings of the referee on the trial. Nor is it claimed that his findings of fact are not supported by the evidence.

SMITH & GILMAN for Appellant.

ALLIS, GILFILLAN & WILLIAMS for Respondent.

*By the Court*—MCMILLAN, J.—There is no doubt, we think, that the facts as found by the referee in this case, show such a part performance of the parol contract between the plaintiff and the defendant Newell, as withdraws it from the operation of the statute of frauds. The plaintiff paid to Newell the five hundred dollars for the payment in hand, provided for in the contract between Lash and Newell; the latter delivered the written contract between himself and Lash to the plaintiff, who received and has ever since retained it, and relying on said verbal arrangement with Newell, and supposing he would carry it out in all respects, the plaintiff thereupon entered upon the land and commenced improving the same by breaking or plowing it, and did break or plow seventy-five acres—about one-half—of the land, at a cost of $3.00 per acre for each of said seventy-five acres. It distinctly appears from the referee's report, that these things were all done subsequent to and in pursuance of the parol agreement, and that such entry into possession and improvement of the land by the plaintiff, was with the knowledge of, and without objection from the defendant Newell. Delivery of, and entry into possession of land in pursuance of, and in direct reference to a parol contract, has always been considered an act of part performance, which will take the case out

of the statute of frauds, and entitle the vendee to the specific performance of the contract.  *Parkhurst vs. Van Courtland*, 14 *Johns.*, 15; *Moreland vs. Lemasters*, 4 *Blackford*, 383; *Harris vs. Knickerbacker*, 5 *Wend.*, 638; 1 *Leading Cas. in Eq.*, 732, and authorities cited.  What then is the effect of this contract?  The distinct object of Newell and the plaintiff on making this parol contract was that the plaintiff might become the owner of the land, and for this purpose Newell entered into the written contract with Lash.  It was agreed by this parol contract not only that Newell upon the consummation of the purchase and the execution of the deed from Lash to him, would immediately convey the premises to the plaintiff, but it was further agreed that "*all the rights secured under the contract of purchase to said Newell should instantly inure to the benefit of said plaintiff*, the said Newell to be merely the channel or conduit through which the title should flow from the said Lash to plaintiff."  It seems to us from this agreement that the parties intended it as an assignment of the contract of purchase by Newell to the plaintiff, and as Newell's right to the possession of the premises was secured by the terms of the written contract alone, the delivery of the written contract and of the possession of the premises by him to the plaintiff, would indicate the same construction by the parties themselves; and such we think was the effect of the parol agreement and the acts of the parties thereunder.

Under our statute it would seem that no trust would have resulted in favor of Gill from the mere payment of the purchase money by him under this agreement, but the defendant Newell would have the title discharged of any trust.  *Gen. Stat.*, *Ch.* 43, *secs.* 7–8, *p.* 341; *Wentworth vs. Wentworth*, 2 *Minn.*, 277.  Under the written agreement standing alone, therefore, Newell would become the *equitable* owner of the

premises and entitled to the possession. But as the express purpose of the parol agreement between Newell and Gill was to procure the land for Gill, and the written agreement was obtained by Newell and delivered to Gill for that purpose, and in pursuance of this parol agreement, the effect of the parol agreement as between them, if valid, was to transfer the equitable ownership of the land, and the rights of Newell under the written contract to Gill, so as to enable him, either through Newell or in some other way, to obtain the legal title; and whether in one way or the other, as between the parties to the contract, cannot be material, since in either way their intention and agreement will be substantially accomplished. This, as we have seen, was the intention of the parties, and upon this understanding they acted, Gill advancing the first payment of the purchase money under the written contract, entering into the possession of the premises and making valuable improvements thereon at a large cost and expense.

The plaintiff having thus entered into possession of and improved the premises on the strength of the agreement that all the rights of Newell under the written contract inured to him, among which were the right of possession, and the right to acquire the legal title upon the performance of the terms of the contract, it would be a fraud upon him by Newell to say that he acquired no such rights; the law will therefore give effect to the contract according to the intention of the parties.

As Newell—the parol contract being valid—was by his own agreement, a mere instrument to pass the legal title to Gill, the equitable owner, if he in fraud of his agreement repudiates the contract, and seeks to defeat the transfer of the legal title to the plaintiff, a Court of Equity will dispense with his instrumentality, and find other means of accomplishing the original intention and agreement of the parties.

And since Lash, the original owner of the premises, interposes no objection to this course, but is willing to convey directly to the party entitled to a conveyance, Newell having repudiated the agreement and refused to carry it out, the Court will give effect to the contract and direct its execution by a conveyance directly to the plaintiff. The referee finds that the defendant Newell about the time of, but prior to the maturity of the second payment, repudiated the parol agreement and refused to carry it out, and offered to repay the plaintiff all the money he had expended on account of the land, including the amount paid for plowing, together with interest thereon at the rate of twelve per cent. per annum, and in addition thereto one hundred dollars by way of bonus, and for his trouble, and duly tendered him the money, but the plaintiff declined to receive the money or any part thereof. The tender by Newell was ineffectual for any purpose; it could not work a recission of the contract, nor did it operate as an excuse or justification of its repudiation by the defendant Newell. The terms of this contract between the plaintiff and Newell, as found by the referee, are complete and unambiguous; there is nothing whatever inequitable on the part of the plaintiff, nor are there any equities in favor of the defendant obstructing a decree of specific performance; the repudiation of the contract was based upon nothing but the desire of the defendant Newell not to carry it out. The offer or tender by the defendant, indeed, is coupled with an admission of the agreement, and determination to violate it. So far, therefore, as this offer or tender by the defendant is concerned, it cannot affect the rights of the parties in this case.

Has the plaintiff complied with his agreement? It is objected by the defendant Newell, that when the first deferred payment fell due the plaintiff did not furnish or offer to fur-

nish him the money to meet it, or offer to pay Lash except upon condition that Lash would convey to him, the plaintiff.

If we are correct in the view taken of the parol agreement, that as between Newell and Gill at least, its operation was in the nature of an equitable assignment of the written contract to the latter, and that the former was a mere instrument to pass him the title, it may perhaps be doubtful whether as between them a tender was necessary at all, at least it would seem to follow that the repudiation of the contract, and refusal to carry it out by Newell prior to the maturity of the deferred payments, superseded the necessity of a tender by Gill, as the repudiation of the contract was virtually a refusal of the tender if offered, and neither law nor equity requires the performance of an unnecessary act. Newell having parted with his interest in the contract, it is not for him to object to the sufficiency of the tender by the plaintiff to Lash, and Lash interposes no objection to conveying the premises to Gill on the ground of any want of performance of the contract by him; Lash having received notice of Gill's rights in the premises was bound by the notice. Newell, therefore, acquired no right, either as against Gill or Lash, by his offer to the latter to pay the deferred installments of the purchase money, if he, Lash, would convey the premises to him.

It does not appear that any note or mortgage was ever executed by Newell under the written contract; the payment of the purchase money will cancel the written agreement, and no liability will remain thereafter against Newell. Lash raises no objection on the ground of want of performance, but is willing to convey to the party entitled to a conveyance, upon the payment of the balance of the purchase money. And the plaintiff is now and ever has been ready and willing and able to make said payments on his part, and take a deed of the premises either directly from Lash, or from Newell if

he will carry out the parol agreement. Newell has repudiated and refused and still refuses to carry out the parol agreement. The agreements between the parties will be substantially effected in the conveyance of the premises by Lash directly to Gill the plaintiff. We see no reason, therefore, why the plaintiff is not entitled to a decree or judgment in accordance with the finding of the referee. The judgment entered being in accordance with the finding, it is correct.

Judgment affirmed.